# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ELLEN BERNSTEIN-ELLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 C 7010 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| AT&T PENSION PLAN (NON-BARGAINED | ) | |
| PROGRAM) and AT&T SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants' motion to dismiss the complaint is granted for the reasons set forth below.

## BACKGROUND

Plaintiff, Ellen Bernstein-Ellis, is the surviving spouse of Stephen Ellis, who died on July 26, 2019 after having been an employee of AT&T for nearly 35 years. During his employment, Stephen Ellis participated in the Nonbargained Program of the AT&T Pension Plan (the "Plan").[1] The Plan is sponsored by AT&T for the benefit of its employees and their beneficiaries. Defendant AT&T Services, Inc. is the administrator of the Plan. Plaintiff sues the Plan and AT&T Services, Inc. for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA").

The complaint alleges as follows. In July 2018, Stephen Ellis had to cease working after he was diagnosed with a rare and aggressive form of cancer. Mr. Ellis applied for and began receiving disability benefits through a welfare benefit program sponsored by AT&T. The disability payments were due to expire on August 1, 2019. In spring 2019, it became clear that Mr. Ellis's cancer was terminal. Mr. Ellis was fully vested in the Plan and eligible to receive a retirement benefit. To ensure that his wife would receive a 100 percent survivor benefit from the Plan, Mr. Ellis accessed the Plan's pension service center internet portal to take the steps necessary to commence his retirement. Navigating the internet site, however, was confusing and frustrating for Mr. Ellis; he was unable to determine how to make a pension election or locate a pension-election form. In May 2019, Mr. Ellis sent an email to his direct supervisor, Barb Monte, which "informed her of the imminency of his death," but "[t]here was no substantive

---

[1] Defendants state in the memorandum in support of their motion that plaintiff has incorrectly named the Plan as "AT&T Pension Plan (Non-Bargained Program)" when its actual name is "AT&T/Warner Media Pension Benefit Plan." For purposes of this ruling, the Court will treat the complaint as if plaintiff had named the correct defendant plan.

response to that email offering assistance in electing the pension in a manner that would protect his stated goals and intent." (ECF No. 1, Compl. ¶¶ 12-13.) "Nor did Ms. Monte or anyone acting on behalf of AT&T, the Plan, or [AT&T] Services explain to Mr. Ellis or to the Plaintiff at any time prior to Mr. Ellis's death that if he died prior to his scheduled retirement date, the survivor benefits payable to Plaintiff would be significantly diminished." (*Id.* ¶ 13.) Defendants did not offer the Ellises "live assistance with retirement elections" or with "navigating the retirement service center internet portal," nor were the Ellises contacted by defendants "to confirm [that] the retirement information" they had on file prior to Mr. Ellis's death "was consistent with his intent." (*Id.* ¶ 15.)

After Mr. Ellis's death, plaintiff sought to apply for survivor benefits from the Plan. She was informed that she was not eligible for a 100 percent survivor benefit because Mr. Ellis had died prior to his August 1, 2019 scheduled retirement date. Plaintiff then submitted a formal application to receive the full survivor benefit, but her claim was denied. She submitted a timely appeal of her denied claim on May 27, 2020; the appeal was denied on September 26, 2020. Plaintiff asserts that as part of her appeal, she requested that defendants produce "all relevant documentation relating to her claim," (*id.* ¶ 20), but they failed to do so, (*id.* ¶ 21).

Plaintiff brings this action under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), which allows plan participants or beneficiaries to obtain "appropriate equitable relief" for practices that contravene the statute or the terms of the plan. She also seeks attorneys' fees and costs and prejudgment interest. Plaintiff alleges that defendants breached their fiduciary duty of loyalty to her and her late husband by failing to provide (1) "a user-friendly internet portal that would enable [Mr. Ellis] to make retirement decisions consistent with his expressed desire during his terminal illness to make sure his wife was provided for after his passing"; and (2) "live human assistance to inquire as to his circumstances and intent and who could answer questions and help facilitate the election of an earlier retirement date that preceded [his] death." (Compl. ¶ 28.) Plaintiff also alleges that defendants failed to provide her with a full and fair review of the denial of her claim by (1) withholding relevant documentation; (2) "ignoring" her appeal and failing to respond to it within the time frame established by regulation; and (3) "not giving full and fair consideration to the arguments and evidence Plaintiff submitted in support of her claim appeal." (*Id.* ¶ 30.) Plaintiff prays for an award of a "surcharge remedy" consisting of "the balance of the Survivor Benefits that would have been payable had Stephen Ellis been able to accelerate his retirement date to a date prior to his death," as well as the application of a *de novo* standard of judicial review. (*Id.*, Prayer for Relief.)

Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

## DISCUSSION

For purposes of a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts as true all well-pleaded facts, and draws all reasonable inferences in the plaintiff's favor. *See Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, a complaint must comply with Rule 8 by containing "sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In their brief, defendants first provide background information about the Plan, drawn from relevant portions of Plan documents.[2] The default benefit under the Plan is a "Joint and 50% Survivor Annuity," but the Plan allows participants to elect a "Joint and 100% Survivor Annuity," subject to specific election requirements. (ECF No. 16-2, Nonbargained Program of the AT&T Pension Benefit Plan §§ 13.1.2, 13.2.4.) The participant must "execut[e] a Qualified Election . . . during the Election Period." (ECF No. 16-1, AT&T Pension Benefit Plan § 13.2.1.) A "Qualified Election" is one made in writing and signed by the participant, with written and notarized consent from the participant's spouse. (*Id.*, § 13.2.2.) The "Election Period" is "the period that is no less than thirty (30) and no more than one hundred eighty (180) days before the Annuity Starting Date." (*Id.*, § 13.2.3.) The Plan provides that if a participant "dies before his Annuity Starting Date," a Qualified Election would be "null and void." (*Id.*, § 13.2.1; ECF No. 16-1, § 13.2.4 ("[I]f the Participant is living on his Annuity Starting Date and has a Spouse on such date, he may elect his Program Pension Benefit to be paid in the form of a Joint and 100% Survivor Annuity with such Spouse as the joint annuitant.").) The Plan further provides that if a participant with a vested interest "dies before his Annuity Starting Date, then the Surviving Spouse . . . of the Participant will receive a Pre-Retirement Survivor Annuity under the applicable formulas contained in this Article or an applicable Supplement (but considering only the formulas for which such Participant is eligible) that produces the greatest Pre-Retirement Survivor Annuity with respect to such Participant," which according to defendants is a 50 percent annuity. (ECF No. 16-2, § 9.1.) Thus, the Plan provides that in order for a surviving spouse to receive a 100 percent survivor pension benefit, a participant's retirement date must precede their death.

Defendants contend that plaintiff fails to state a claim for breach of fiduciary duty under ERISA because there are no allegations that the relevant language of the Plan is ambiguous or unclear or that Mr. Ellis ever put defendants or AT&T on notice that he needed assistance with or additional information regarding pension benefit or retirement elections. "A claim for breach of fiduciary duty under ERISA requires the plaintiff to prove: (1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010). The second factor is at issue here—whether plaintiff has sufficiently alleged that defendants owed a fiduciary duty that was breached.

ERISA imposes on fiduciaries "a duty of loyalty like that borne by a trustee under common law," and fiduciaries "must exercise reasonable care in executing that duty." *Smith v. Med. Benefit Adm'rs Grp., Inc.*, 639 F.3d 277, 281 (7th Cir. 2011) (citations omitted). While

---

[2] Plaintiff does not object to the Court's consideration of the Plan documents, and it is appropriate for the Court to consider them when confronted with a motion to dismiss a claim of breach of fiduciary duty. *See Daniels v. Bursey*, 313 F. Supp. 2d 790, 806 (N.D. Ill. 2004) (citing *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 854-55 (7th Cir. 1997)).

ERISA generally does not require a fiduciary to investigate each plan participant's unique circumstances and provide individualized advisory opinions, *Chojnacki v. Ga.-Pac. Corp.*, 108 F.3d 810, 817-18 (7th Cir. 1997), the duty of loyalty does "encompass[] a negative obligation not to mislead the insured, as well as a positive obligation to communicate material information to the insured in circumstances where the fiduciary's silence might itself lead the insured to misapprehend his rights and obligations," *Smith*, 639 F.3d at 281.

In response to defendants' motion, plaintiff states that her claim is not that the Plan language is inaccurate, or otherwise based on the Plan documents, or that defendants owed her and her husband a general duty to provide individual guidance. (ECF No. 21, Pl.'s Mem. Opp'n Defs.' Mot. at 2, 7-8.) Rather, she says that her complaint is that "Mr. Ellis was not given appropriate advice when he sought it." (*Id.* at 8.) Plaintiff argues that a May 25, 2019 email from Mr. Ellis to Barb Monte "triggered fiduciary duties." (*Id.*) Plaintiff quotes from a portion of the email in the complaint, but defendants attach the entire email as an exhibit to their motion.[3] The email reads in full:

> Hi Barb,
>
> Another update. The nausea and high fever put me in the hospital last Sunday. Ran more tests and scans and found that main culprit was not keytruda reaction, rather the disease continuing to advance aggressively.
>
> We were able to turn nausea and fevers around so that is good. Keytruda is discontinued. I've added in a chemo that is palliative in nature - see if that provides any relief.
>
> So, despite my best intentions and hopes, I will not return to work at AT&T. My plan right now is to retire on or about August 1 toward the end of the LOA.[4] If you have a different perspective that you'd like to share, please please do so. I am simply trying to manage this best as I can to set my wife up and minimize hassle and inconvenience on your side.
>
> Many thanks for your support. I am sorry we didn't get a chance to explore the marvelous world of Lifeline and other public policy programs together.
>
> Best,
> Steve

(ECF No. 16-3.) Ms. Monte responded: "Thanks for the update. I'll support you in any way I can." (*Id.*)

---

[3] Plaintiff does not object to the Court's consideration of the email, and the Court will consider it because the email is mentioned in the complaint and central to plaintiff's claim. *See, e.g., Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

[4] The Court presumes that "LOA" is an abbreviation for "leave of absence."

Defendants contend that Mr. Ellis's communication with his immediate supervisor, a non-fiduciary employee who was not a representative of the Plan, could not trigger fiduciary obligations on behalf of the Plan or its administrator, especially where the Plan documents are unambiguous. Defendants also contend that Mr. Ellis's email with Ms. Monte did not indicate that Mr. Ellis needed assistance with accelerating his retirement date or electing a pension benefit, and that there are no allegations of other communications in which Mr. Ellis purportedly put AT&T or the Plan on notice that he needed help navigating his retirement or pension elections. Plaintiff, on the other hand, argues that Mr. Ellis's statement about "set[ting his] wife up . . . clearly referenced survivor benefits," and that he "was communicating [in the email] that he did not fully understand how the pension plan worked and was desperately seeking advice and assistance." (Pl.'s Mem. Opp'n Defs.' Mot. at 9.) In plaintiff's view, the email to Ms. Monte "should have raised a red flag that triggered further action." (*Id.*) The Court does not agree. The May 25 email simply cannot reasonably be interpreted as a request for assistance with changing Mr. Ellis's planned retirement date or as an expression of confusion about pension benefit elections. Mr. Ellis informed his supervisor that his plan was to retire "on or about August 1." He did not express a desire to accelerate that date or indicate that he was having difficulty in arranging for retirement or pension elections. Even if the statement about "set[ting his] wife up" can reasonably be interpreted as a reference to making a pension benefit election, there is no indication that Mr. Ellis was confused or misled about how to do so. Mr. Ellis did not mention the Plan or the online pension service portal, request to speak with anyone, or suggest that he needed help with his elections.

Plaintiff also fails to respond to defendants' argument that Ms. Monte, as Mr. Ellis's direct supervisor, is not alleged to have been a Plan fiduciary, benefits staff, or other Plan representative such that any notice to *her* that Mr. Ellis might require individual advice or attention would trigger fiduciary disclosure obligations on the part of defendants. As defendants correctly point out, courts have recognized affirmative disclosure obligations only where a beneficiary's circumstances become known to fiduciaries, benefits staff, or other plan representatives. *See, e.g., Kenseth*, 610 F.3d at 466 ("[O]nce an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even if that requires conveying information about which the beneficiary did not specifically inquire.") (internal punctuation, emphasis, and citation omitted); *Killian v. Concert Health Plan*, 742 F.3d 651, 665 (7th Cir. 2013) ("[I]f a fiduciary supplies participants and beneficiaries with plan documents that are silent or ambiguous on a recurring topic, the fiduciary exposes itself to liability for the mistakes that *plan representatives* might make in answering questions on that subject.") (emphasis added and internal punctuation omitted); *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 590-91 (7th Cir. 2000) (observing that the plan's documents were inadequate and stating that "*fiduciaries* must communicate material facts affecting the interests of plan participants or beneficiaries" and that the duty to communicate "exists when a participant or beneficiary asks *fiduciaries* for information, and even when he or she does not") (emphasis added and some internal punctuation omitted). Accordingly, by relying on the email to Ms. Monte, plaintiff does not plausibly allege circumstances where the duty of loyalty was triggered by notice to a fiduciary or fiduciary's representative that a beneficiary might be under a misapprehension of, or need additional

information regarding, his rights and obligations under a plan. Aside from plaintiff's reliance on the email, there are no allegations in the complaint that Mr. Ellis or plaintiff sought other assistance from the Plan. Plaintiff asserts that Ms. Monte and AT&T "were aware of Mr. Ellis's dire health circumstances," (Pl.'s Mem. Opp'n Defs.' Mot. at 9), but cites no authority for the proposition that this awareness alone, in the absence of circumstances indicating that Mr. Ellis was laboring under confusion about his rights or obligations under the Plan, created a duty to contact Mr. Ellis to provide individualized attention regarding the Plan.

Plaintiff contends that the circumstances of this case "are strikingly similar to those presented in" *Swaback v. American Information Technologies Corp.*, 103 F.3d 535 (7th Cir. 1996), in which the Court of Appeals reversed the district court's entry of summary judgment in favor of defendant Ameritech on plaintiff's claim for a lump-sum pension benefit. (Pl.'s Mem. Opp'n Defs.' Mot. at 6.) *Swaback* is inapposite. There, the decedent plan participant had communicated to Ameritech his desire to retire and elect a lump-sum benefit, but he did not make the election because Ameritech had made "repeated written and oral misrepresentations" to him that he was ineligible for the lump sum unless he met further requirements that were not actually part of the plan. *Id.* at 543. Here, plaintiff does not allege that defendants made any misrepresentation whatsoever to Mr. Ellis or were led to believe that Mr. Ellis misunderstood the Plan provisions.

Plaintiff also appears to argue that defendants independently breached their fiduciary duty by failing "to implement an on-line retirement enrollment portal that could be effectively navigated or offer prospective retirees an avenue to communicate with a live pension counselor." (Pl.'s Mem. Opp'n Defs.' Mot. at 7.) This theory differs slightly from what is alleged in the complaint, because the complaint ties the allegations about the portal and live assistance to Mr. Ellis's communications (which the Court has held cannot reasonably be interpreted as triggering a duty to provide individualized guidance or information). In the complaint, plaintiff alleges:

> Notwithstanding the duty of loyalty owed to Plaintiff and her late husband, Defendants breached that duty by failing to provide Stephen Ellis with a user-friendly internet portal that would enable him to make retirement elections consistent with his expressed desire during his terminal illness to make sure his wife was provided for after his passing. In addition thereto, Defendants breached their duty of loyalty by failing to assist Stephen Ellis and Plaintiff by providing them with live human assistance to inquire as to his circumstances and intent and who could answer questions and help facilitate the election of an earlier retirement date that preceded Stephen Ellis's death.

(Compl. ¶ 28.) Plaintiff's claims that the internet portal was not "user-friendly" or could not be "effectively navigated" are impermissibly vague. And, in any event, plaintiff cites no authority for the proposition that ERISA requires plan fiduciaries to provide an online portal, let alone in a particular format, or "live" assistance, to make elections under a plan. Defendants correctly maintain that nothing in the statute imposes obligations on fiduciaries to provide participants with their preferred avenues for access.

Plaintiff further asserts in her brief that Mr. Ellis "had no means of communicating with any Plan representative who could have assisted him" and that Barb Monte "was the only AT&T representative he knew he could communicate with." (Pl.'s Mem. Opp'n Defs.' Mot. at 7, 10.) While a plaintiff is allowed to elaborate on existing claims with additional factual allegations when the new facts are consistent with the original claims, *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012), a complaint cannot be amended by a brief in opposition to a motion to dismiss, *Agnew v. NCAA*, 683 F.3d 328, 348 (7th Cir. 2012). Plaintiff's arguments do not supplement the existing claims; rather, they are an entirely different claim that defendants did not provide Mr. Ellis with a way of obtaining assistance with his pension elections.[5] If plaintiff wishes to assert a claim based on a wholesale lack of assistance, an amended complaint is required.

As a final matter, the Court must address plaintiff's allegation that, through nondisclosure, delay, and a lack of "full and fair consideration," defendants denied her a "full and fair review" of her claim, to which she was entitled under § 503(2) of ERISA, 29 U.S.C. § 1133(2). (Compl. ¶¶ 29-30.) "A full and fair review concerns a beneficiary's procedural rights, for which the typical remedy is remand for further administrative review." *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d Cir. 2008); *see also Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 240 (4th Cir. 2008) (stating that a procedural ERISA violation cannot afford a plaintiff a substantive remedy "if she has no entitlement to benefits under the terms of the Plan" and that, in cases where there is such a violation, "the appropriate remedy is to remand the matter to the plan administrator so that a 'full and fair review' can be accomplished"). Plaintiff, however, does not seek a remand for further administrative review; she prays for "the application of a *de novo* standard of judicial review in this matter." (Compl., Prayer for Relief.) This relief is derivative of the claim for a surcharge remedy under § 502(a)(3) and therefore falls with the substantive claim. In light of this conclusion, the Court need not address defendants' argument (which is raised in any event in their reply brief only and thus waived for purposes of the instant motion) that full-and-fair-review remedies do not apply to a claim for equitable relief under § 502(a)(3).

The Court will dismiss the complaint without prejudice for failure to state a claim on which relief can be granted. If plaintiff still wishes to pursue this litigation and can do so in good faith and in keeping with Rule 11, she may submit an amended complaint by June 4, 2021.

## CONCLUSION

Defendants' motion to dismiss the complaint [15] is granted. The complaint is dismissed without prejudice, and plaintiff is given leave to file an amended complaint by June 4, 2021. If an amended complaint is not filed by that date, this action will be dismissed.

---

[5] The Court also notes that the qualifications in plaintiff's assertions—"who could have assisted him" and "[whom] he knew he could communicate with"—render them vague. It is unclear what these phrases mean, and plaintiff does not explain.

**DATE:** May 17, 2021

                                                        *Ronald A. Guzmán*
                                                        **Hon. Ronald A. Guzmán**
                                                        **United States District Judge**